Steven Gerber
Mary Pat Gallagher
GONZALES SAGGIO & HARLAN LLP
155 Willowbrook Blvd., Suite 300
Wayne, New Jersey 07470
(973) 256-9000

*Of Counsel:*
Don J. Mizerk (admitted *pro hac vice*)
Katherine E. Rohlf (admitted *pro hac vice*)
HUSCH BLACKWELL LLP
120 S. Riverside Plaza, Suite 2200
Chicago, Illinois 60606
(312) 655-1500

*Attorneys for Amerigen Pharmaceuticals, Ltd.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHIRE LLC,<br><br>Plaintiff,<br><br>v.<br><br>COREPHARMA LLC,<br><br>Defendants. | Consolidated Civil Action No.<br>14-05694 (RMB-JS) |
| SHIRE LLC,<br><br>Plaintiff,<br><br>v.<br><br>AMERIGEN PHARMACEUTICALS LIMITED,<br><br>Defendant. | Civil Action No.<br>14-06095 (RMB-JS) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AMERIGEN PHARMACEUTICALS, LIMITED'S MOTION TO AMEND DISCOVERY CONFIDENTIALITY ORDER**

## TABLE OF CONTENTS

**Page**


**TABLE OF AUTHORITIES ........................................................ iii**

**I. INTRODUCTION ........................................................ 1**

**II. BACKGROUND ........................................................ 1**

**III. ARGUMENT ........................................................ 3**

A. The DCO Should Be Amended Because, As A Matter of Common Sense and Public Policy, Plaintiff Should Not Be Allowed To Use Amerigen's Confidential Information To Investigate Completely New Causes Of Action. ........................................................ 3

B. The DCO Should Be Amended Because Plaintiff Will Not Be Able To Move to Amend Its Complaint In A Timely Manner. ........................................................ 9

C. The DCO Should Be Amended Because Any Attempt By Plaintiff To Assert Additional Patents In This Action Would Be Improper, As This Court Would Lack of Subject Matter Jurisdiction Over Such Claims ........................................................ 11

**IV. CONCLUSION ........................................................ 15**

**CERTIFICATION OF SERVICE ........................................................ 17**

## TABLE OF AUTHORITIES

### FEDERAL COURT CASES

*Abbott Labs v. Zenith Labs., Inc.*,
934 F. Supp. 925 (N.D. Ill. 1995) ........ 12

*Alcon Research Ltd. v. Barr Labs., Inc.*,
745 F.3d 1180 (Fed. Cir. 2014) ........ 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 15

*AstraZeneca AB v. Ranbaxy Pharm., Inc.*,
No. 05–5553(JAP), 2008 WL 5272018 (D.N.J. Dec. 16, 2008) ........ 7, 8

*AstraZeneca Pharms. LP v. Apotex Corp.*,
669 F.3d 1370 (Fed. Cir. 2012) ........ 12, 13

*AT&T Mobility, LLC v. Digital Antenna, Inc.*,
No. 09–60639–CIV, 2010 WL 3608247 (S.D. Fla. Sept. 9, 2010) ........ 7

*Auxilium Pharms., Inc. v. Watson Labs., Inc.*,
No. 12–3084(JLL), 2013 WL 5503209 (D.N.J. Oct. 2, 2013) ........ 7

*Avago Techs. Fiber IP (Singapore) PTe. Ltd. v. IPtronics Inc.*,
No. 5:10-cv-02863 EJD, 2012 WL 3835107 (N.D. Cal. Sept. 4, 2012) ........ 8

*Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*,
Nos. 08-C-0953, 09-C-0108, 2009 WL 6337911 (E.D. Wis. Sept. 24, 2009) ........ 14

*Cephalon, Inc. v. Sandoz, Inc.*,
Civ. No. 11-821-SLR, 2012 WL 682045 (D. Del. Mar. 1, 2012) ........ 14

*Eisai Co., Ltd. v. Mut. Pharm. Co., Inc.*,
No. 06-3613, 2007 WL 4556958 (D.N.J. Dec. 20, 2007) ........ 11, 12

*Eli Lilly & Co. v. Medtronic, Inc.*,
496 U.S. 661 (1990) ........ 12

*Glaxo Inc. v. Novopharm, Ltd.*,
110 F.3d 1562 (Fed. Cir. 1997) ........ 11

*Kearns v. General Motors Corp.*,
94 F.3d 1553 (Fed. Cir. 1996) ........ 4

*Merck Sharp & Dohme Corp. v. Sandoz Inc.*,
Case No. 12-cv-3289, 2013 WL 591976 (D.N.J. Feb. 14, 2013) ........ 13, 14

*On Command Video Corp. v. LodgeNet Entm't Corp.*,
976 F.Supp. 917 (N.D. Cal. 1997) ........ 8

*Osteotech, Inc. v. Regeneration Techs., Inc.*,
No. 06-4249(FLW), 2008 WL 2036795 (D.N.J. May 9, 2008)........ 7

*Space Sys./Loral, Inc. v. Lockheed Martin Corp.*,
No. C 96-3418, 1998 WL 1045304 (N.D. Cal. Aug. 5, 1998) ........ 8

*Takeda Pharm. Co. v. Handa Pharms., LLC*,
Case Nos. C-11-840, C-11-1609, C-11-1610, 2013 U.S. Dist. LEXIS 74126 (N.D. Cal. Apr. 8, 2013) ........ 13, 14, 15

*Takeda Pharm. Co. v. TWi Pharm., Inc.*,
Appeal Nos. 2014-1074 and 2014-1129........ 13

*Teva Pharms. USA, Inc. v. Abbott Labs.*,
301 F. Supp. 2d 819 (N.D. Ill. 2004)........ 14

**FEDERAL STATUTORY AUTHORITIES**

21 U.S.C. § 355(b)(1)(G) ........ 5

21 U.S.C. 355(j)........ 12

21 U.S.C. 355(j)(5)(B)(iii)........ 5

35 U.S.C. § 271(e)(2)........ 11, 12, 13, 14, 15

35 U.S.C. § 271(e)(2)(A) ........ 14

**FEDERAL RULES AND REGULATIONS**

Fed. R. Civ. P. 26(b)(1)........ 4

## I. INTRODUCTION

The parties dispute the meaning of the Discovery Confidentiality Order ("DCO") entered in this case as it relates to the permissible uses of confidential information produced in this action. Plaintiff maintains that it can use Amerigen's confidential information to investigate any potential causes of action, including infringement of completely new patents, as long as Plaintiff does so in consideration of a potential motion to seek to amend the complaint in this case to add such cause of action. Amerigen contends that confidential information produced in this action may be used "solely for purposes of the prosecution and defense of this action," which means only with respect to causes of action and defenses relating to the current patents-in-suit, U.S. Patent Nos. RE42,096 and RE41,148.

To facilitate the Court's consideration of this dispute, the Court has requested that Amerigen file a motion to amend the DCO to add specific language resolving this dispute. Therefore, Amerigen requests that this Court add an additional sentence to Paragraph 3 of the DCO to clarify that "[f]or purposes of this case, 'this action' as used in this Order shall mean 'this action with respect to U.S. Patent Nos. RE42,096 and RE41,148.'" Amerigen respectfully requests that the Court grant its motion.

## II. BACKGROUND

Amerigen and Plaintiff previously submitted letter briefs to this Court regarding their dispute over the meaning of the current language of the DCO. (Civil Action No. 14-cv-6095, Docket Index ("D.I.") 31 & 33.)[1] This Court held a telephonic hearing on February 23, 2015 for oral argument on the parties' letter briefs. The crux of the parties' dispute is the meaning of the

---

[1] Amerigen incorporates by reference the arguments made in its letter brief of January 26, 2015 as if fully restated herein. (Civil Action No. 14-cv-6095, D.I. 31.)

term "this action" as used in Paragraph 3 of the DCO negotiated between the parties.[2] During the telephonic hearing, the Court explained that it did not feel that issuing an advisory opinion on the parties' dispute would be appropriate. Therefore, per the Court's instructions, a DCO has now been entered in this case (Civil Action No. 14-cv-5694, D.I. 37) without prejudice to the parties' right to file a motion seeking to amend Paragraph 3 of the DCO. Defendant Amerigen now moves to amend that DCO in order to add clarifying language to Paragraph 3 in order to render the parties' dispute less abstract.

The current language of Paragraph 3 of the DCO provides that "[a]ll Confidential material shall be used by the receiving party ***solely for purposes of the prosecution or defense of this action.***" (*Id.* at ¶ 3 (emphasis added).) It is Amerigen's position that "this action" means the claims and defenses that are involved in the current action, which is a patent infringement action regarding U.S. Patent Nos. RE42,096 ("the '096 patent") and RE41,148 ("the '148 patent"). However, it appears that Plaintiff believes that "this action" includes not only the claims and defenses that are currently in this case, but also includes ***any*** cause of action that Plaintiff ***may*** seek to bring into this action. Specifically, Plaintiff has indicated that it plans to use Amerigen's confidential information, including Amerigen's Abbreviated New Drug Application ("ANDA") No. 205-401, to evaluate potential infringement of other patents owned by Plaintiff, including U.S. Patent No. 6,913,768 ("the '768 patent"). The '768 patent is unrelated to the two patents-in-suit and is not listed in the FDA *Orange Book*[3] in connection with Adderall XR (the branded product in this case).

---

[2] The language of Paragraph 3 of the parties' negotiated DCO tracks the language of the District of New Jersey model DCO verbatim. (*See* Appendix S to D.N.J. Local Rules.)

[3] *Orange Book*The is the common name for the FDA's publication *Approved Drug Products with Therapeutic Equivalents*. The *Orange Book* serves as notice to potential ANDA-filers of which patents are associated with a particular brand drug, as indicated by each brand drug sponsor.

To facilitate the resolution of this dispute, Amerigen seeks to add the underlined language to Paragraph 3 of the current DCO:

> All Confidential material shall be used by the receiving party solely for purposes of the prosecution or defense of this action, shall not be used by the receiving party for any business, commercial, competitive, personal or other purpose, and shall not be disclosed by the receiving party to anyone other than those set forth in Paragraph 4, unless and until the restrictions herein are removed either by written agreement of counsel for the parties, or by Order of the Court. **For purposes of this case, "this action" as used in this Order shall mean "claims, counterclaims and defenses relating to U.S. Patent Nos. RE42,096 and RE41,148."** It is, however, understood that counsel for a party may give advice and opinions to his or her client solely relating to the above-captioned action based on his or her evaluation of Confidential material, provided that such advice and opinions shall not reveal the content of such Confidential material except by prior written agreement of counsel for the parties, or by Order of the Court.

As explained in this memorandum of law, in light of Plaintiff's stated intent to use Amerigen's confidential information in order to evaluate new and unrelated causes of action, adding this language is needed to clearly establish the acceptable uses of the parties' confidential information produced in this litigation. While the parties' dispute is pending, Plaintiff has agreed not to use Amerigen's confidential information for purposes other than prosecuting and defending its complaint against Amerigen for infringement of the '096 and '148 patents-in-suit.

## III. ARGUMENT

### A. The DCO Should Be Amended Because, As A Matter of Common Sense and Public Policy, Plaintiff Should Not Be Allowed To Use Amerigen's Confidential Information To Investigate Completely New Causes Of Action.

Amendment of the DCO is necessary as a matter of common sense and public policy because Plaintiff's intended use of Amerigen's confidential information would: (1) render the "this action" language in the DCO meaningless; (2) encourage discovery abuses in this case; and (3) inappropriately put Plaintiff in a better position than every other patent holder in this country.

First, amendment of the DCO is necessary because Plaintiff's current interpretation of the

DCO would render the "this action" language of Paragraph 3 meaningless. During the telephonic hearing of February 23, 2015, the Court asked Plaintiff's counsel if, under its interpretation of the DCO, it would be permitted to evaluate a portfolio of 1000 patents using Amerigen's confidential information. Though Plaintiff's counsel did not respond directly, that is exactly what Plaintiff believes it can do with Amerigen's confidential information. As Plaintiff admits, each asserted patent is a new cause of action. *Kearns v. General Motors Corp.*, 94 F.3d 1553, 1555 (Fed. Cir. 1996) ("Each patent asserted raises an independent and distinct cause of action."). Taken to its logical conclusion, then, Plaintiff's interpretation of the DCO would allow Plaintiff to consider Amerigen's confidential information to evaluate any new cause of action, under the auspice that Plaintiff could conceivably seek leave to amend the complaint to add the additional cause of action. Plaintiff's position puts the cart before the horse, as Plaintiff plans to use Amerigen's confidential information to analyze infringement of patents that admittedly are not in this action ***before*** it can determine whether it will even seek leave to amend the complaint and attempt to bring those patents into this action. Such an interpretation of the DCO is nonsensical as it would render the "this action" language of the DCO absolutely meaningless.

Second, amendment of the DCO is necessary to prevent discovery abuses in this case. Indeed, Plaintiff's own propounded requests for production highlight the impropriety of what Plaintiff intends to do with Amerigen's confidential information. Fact discovery should be tailored to include only material that is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Local Patent Rules of the District of New Jersey, presumably in an effort to narrow the disputed issues in a case as quickly as possible in order to streamline discovery, require parties in ANDA cases like this one to serve patent contentions early. To that end, Amerigen has already served its non-infringement and invalidity contentions in this case on

January 26, 2015. Plaintiff will serve its contentions on March 16, just over a week away. At that point, the disputed issues in this case with respect to infringement and validity of the patents-in-suit should be clear, and the parties can thoughtfully proceed with targeted fact discovery. Yet a number of Plaintiff's requests for production are so broad and sweeping that they seek information that clearly has no bearing on the claims and defenses currently in this case. For example, Plaintiff's Request for Production No. 9 requests "***[a]ll*** documents and things relating to ***any*** evaluation, analysis, or testing for ***any purpose*** of Adderall XR or ***any other product or formulation containing amphetamine***." Given the narrowed scope of the parties' disputes regarding infringement of Amerigen's ANDA product, the only reason Plaintiff could have to seek such broad discovery is for the improper purpose of investigating causes of action beyond those that are already in this case. Plaintiff's attempt to broaden the scope of discovery to causes of action it may have occasion to assert down the road should not be allowed, as it is contrary to the goals of increasing efficiency and cost-effectiveness in discovery.

Third, the DCO should be amended in this case so as to prevent Plaintiff from being in a better position than all other patent holders in this country. Under the Hatch-Waxman Act, the brand company is the only patent holder that obtains access to the generic filer's confidential information prior to the sale of the proposed ANDA drug product. It is understood that the only reason brand companies get this access is to evaluate infringement of the *Orange Book* listed patents.[4] This is because approval of the ANDA drug product is directly linked to the outcome of litigation involving the *Orange Book* patents. 21 U.S.C. 355(j)(5)(B)(iii) (approval of ANDA

[4] Plaintiff was required to list any patent in the *Orange Book* in connection with Adderall XR "which claims the drug for which the applicant submitted the application or which claims a method of using such drug and with respect to which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or sale of the drug." 21 U.S.C. § 355(b)(1)(G).

delayed by an action "for infringement of the patent that is the subject of the certification and for which information was submitted to the Secretary under subsection (b)(1) or (c)(2)"). No other patent owners in this country are allowed a "sneak peak" of this confidential information, and they must wait until the ANDA drug product is actually launched in order to analyze potential infringement. Yet Plaintiff claims that it is entitled to this "sneak peak" with respect to its patents that are not listed in the *Orange Book*. Specifically, Plaintiff admits that it does not have the information necessary at this juncture to bring action against Amerigen under Shire's additional patents, including the '768 patent, and that it would need to review Amerigen's ANDA (and test Amerigen's ANDA product samples) in order to do so. But according to Plaintiff, because it sued Amerigen on *Orange Book* listed patents, Plaintiff can now use that information to evaluate patents that are outside of the Hatch-Waxman statutory scheme.[5] This Court should not allow Plaintiff to use Amerigen's confidential information to evaluate potential causes of action on patents not listed in the *Orange Book*, and therefore put Plaintiff in a better position than all other patent owners in this country.

The case law cited in Plaintiff's letter brief does not lessen the need for Amerigen's requested amendment. Plaintiff cites several cases in support of the proposition that using confidential information to amend pleadings is a common discovery practice in federal courts. But Plaintiff's case law bears little to no resemblance to the situation here. For instance, in

---

[5] Plaintiff argues that it should be able to sue Amerigen based on review of Amerigen's ANDA because Adderall XR is Shire's product and Amerigen is using Shire's safety and efficacy data in order to get approval. Plaintiff is conflating two very different issues. Plaintiff is allowed access to Amerigen's confidential ANDA information in order to evaluate and prosecute the *Orange Book* listed patents because, at least according to Plaintiff, Adderall XR is supposedly an embodiment of those two patents. However, the '768 patent is not listed in the *Orange Book*. Therefore, Plaintiff has not represented to the FDA that the '768 patent is in any way related to Adderall XR. Plaintiff should not be accorded any special status with regard to the '768 patent beyond that of any other patent holder in the United States.

*AT&T Mobility, LLC v. Digital Antenna, Inc.*, No. 09–60639–CIV, 2010 WL 3608247 (S.D. Fla. Sept. 9, 2010), the plaintiff sought to amend the complaint to resurrect a previously dismissed false advertising claim, and therefore was not seeking to add a new cause of action. *Id.* at *1-2. Moreover, the plaintiff's motion to amend was ***denied***. *Id.* at *3-4. In *Osteotech, Inc. v. Regeneration Techs., Inc.*, No. 06-4249 (FLW), 2008 WL 2036795 (D.N.J. May 9, 2008), the plaintiff was allowed to add an infringement claim for a patent that was related to the patent that was already at issue in the suit, when the parties' pre-litigation discussions involved both patents and where the defendant specifically sought discovery regarding the additional patent even before it was asserted in the case. *Id.* at *1. While the Court mentioned in passing the defendant's argument that plaintiff reviewed defendant's confidential information in order to confirm infringement of the new patent, the court did not provide any analysis of this argument, nor did it seem to take it into account in rendering its ultimate decision in the case. *Id.* at *1-2. Moreover, there was no indication that the plaintiff needed defendant's confidential information to bring its original infringement claim. In *Auxilium Pharms., Inc. v. Watson Labs., Inc.*, No. 12–3084 (JLL), 2013 WL 5503209 (D.N.J. Oct. 2, 2013), the defendant was simply allowed to add an inequitable counterclaim based on a patent that was already asserted in the case, and therefore that case did not involve adding a new patent or cause of action based on confidential information.[6] *Id.* at *1, *7. Finally, in *AstraZeneca AB v. Ranbaxy Pharm., Inc.*, No. 05–5553 (JAP), 2008 WL 5272018, *6-8 (D.N.J. Dec. 16, 2008), while the plaintiff was allowed to amend its complaint to add a new patent in the ANDA context, there is no indication in that opinion that

[6] Amerigen's reservation of its right to add additional defenses or counterclaims to its Answer "that discovery may reveal" does not mean that adding new causes of action to this case based on confidential information is proper. As the plain language of Amerigen's Answer suggests, Amerigen reserves the right to add new defenses or counterclaims with respect to the patents that are currently in suit. Amerigen has no intention of adding new causes of action to this case based on patents that are not listed in the *Orange Book*.

there was any DCO entered in that case restricting the use of confidential information to only the present action, nor is there any indication that the defendant ever challenged the addition of this patent to the case based on the *Orange Book* status of the new patent (indeed, it's unclear if the new patent was listed in the *Orange Book*) or based on the fact that the plaintiff was amending based on confidential information. *Id.* at *6-8.

Plaintiff also claims that "several cases have rejected arguments nearly identical to Amerigen's." This is incorrect, and Plaintiff's case law in support misses the mark. Importantly, none of Plaintiff's cited case law involves an ANDA or is in the Hatch-Waxman context. *Space Sys./Loral, Inc. v. Lockheed Martin Corp.*, No. C 96-3418, 1998 WL 1045304 (N.D. Cal. Aug. 5, 1998); *Avago Techs. Fiber IP (Singapore) PTe. Ltd. v. IPtronics Inc.*, No. 5:10-cv-02863 EJD, 2012 WL 3835107 (N.D. Cal. Sept. 4, 2012); *On Command Video Corp. v. LodgeNet Entm't Corp.*, 976 F.Supp. 917 (N.D. Cal. 1997). Therefore, none of these cases involved concerns regarding plaintiff's unique access to the confidential information at issue (discussed above), nor concerns regarding lack of subject matter jurisdiction or the regulatory importance of expeditiously litigating the case (discussed further below). And all of these cases come out of a single jurisdiction: the Northern District of California.

Finally, Plaintiff also argues that Amerigen has now received Plaintiff's 13 million page production from its previous Adderall XR litigations, which supposedly includes discovery regarding the '768 patent. According to Plaintiff, this somehow bolsters its claim that it should be permitted to bring that patent into this case. But Amerigen did not seek discovery regarding the '768 patent. If Amerigen had the option to only get discovery regarding the two patents-in-suit, it would have chosen that option. But Plaintiff only offered the full production from its previous litigation against Neos Therapeutics Inc. regarding Adderall XR (N.D. Tex., Civil

Action No. 13-cv-1452), which Amerigen has now received. If anything, the production of this additional material is a hindrance to Amerigen's review and analysis of the relevant portions of Plaintiff's production.

In sum, this Court should grant Amerigen's motion to amend the DCO, as Plaintiff's interpretation of the current language of the DCO is unworkable and contrary to common sense and public policy.

### B. The DCO Should Be Amended Because Plaintiff Will Not Be Able To Move to Amend Its Complaint In A Timely Manner.

Moreover, as a practical matter, the DCO should be amended because Plaintiff would not be able to make a timely motion to amend. Because Plaintiff's ultimate motion to amend is unlikely to be successful, there is no practical value to allowing Plaintiff to review Amerigen's confidential information for purposes other than its claims of infringement relating to the '096 and '148 patents.

Plaintiff has indicated that it needs to test Amerigen's ANDA product samples before it will have the information it needs to bring a patent infringement action against Amerigen regarding its additional patents, including the '768 patent. Plaintiff has requested samples of Amerigen's ANDA product, and Amerigen has agreed to provide them (though it is Amerigen's position that these samples can only be used to further evaluate Plaintiff's claims regarding the current patents-in-suit). Plaintiff has requested that Amerigen send its samples to a foreign lab in the United Kingdom, which requires import and export licenses. Plaintiff has represented that this process is expected to take several months to complete. Considering the time it will take before Amerigen can even ship its samples to Plaintiff, let alone the time it will take for Plaintiff to actually test Amerigen's product and analyze the results, it is simply not practical to think that Plaintiff will be able to move to amend its complaint in this case quickly enough so as not to

cause delay to the case schedule. For one thing, Amerigen already served its invalidity and non-infringement contentions over a month ago, and Plaintiff is scheduled to serve its validity and infringement contentions in the coming week. Those contentions did not relate in any way to the '768 patent. In addition, the claim construction phase of this case is going to commence this month. If Plaintiff moves to amend its complaint several months down the road, the parties will need to go through these phases all over again with respect to the new patent(s) at issue. This process would be very disruptive to the case schedule, as Amerigen would then need to analyze a completely new patent or patents and develop non-infringement and invalidity positions on a truncated schedule.[7] Therefore, Amerigen would be at a distinct disadvantage if Plaintiff is allowed to add a new patent now.

The inevitable delay of the case schedule that would accompany any attempt by Plaintiff to amend its complaint in this case would have important regulatory repercussions, and therefore should not be permitted. Specifically, a 30-month stay has been triggered which prevents the FDA from approving Amerigen's ANDA for 30 months ***or until a final judgment is entered in this action in Amerigen's favor***. Amerigen, therefore, has a significant incentive to expeditiously litigate this case. On the other hand, brand companies in Hatch-Waxman litigation, such as Plaintiff, have every incentive to delay the case to preserve their drug monopolies. It is likely that the schedule in this case will already be quite tight in terms of adjudicating the case before the February 2017 deadline (*i.e.*, when the 30-month stay is lifted),

[7] In contrast, Amerigen had to develop its non-infringement and invalidity theories in connection with the '096 and '148 patents before it even filed its ANDA, as those patents were listed in the *Orange Book* (and therefore Amerigen was required to submit a Paragraph IV certification to the FDA regarding those patents). No such analysis has been conducted to date by Amerigen regarding the '768 patent or any other patent in Plaintiff's portfolio. And it would not make sense for Amerigen to go through this costly exercise now, as there is no guarantee that Plaintiff will even assert that patent against Amerigen in this case.

and therefore Amerigen will oppose any attempt by Plaintiff to seek leave to add a new patent, which will change the scope of discovery and otherwise multiply this litigation.

In sum, by granting Amerigen's motion and amending the DCO as proposed by Amerigen, this Court can bypass any future disputes regarding the proper use of confidential information in this case, thereby streamlining this litigation and allowing it to proceed through discovery and trial without the interruption that Plaintiff's threatened motion to amend the complaint would cause.

### C. The DCO Should Be Amended Because Any Attempt By Plaintiff To Assert Additional Patents In This Action Would Be Improper, As This Court Would Lack of Subject Matter Jurisdiction Over Such Claims.

Furthermore, the DCO should be amended because, even if Plaintiff did attempt to assert additional patents in this case, Plaintiff's actions would be fruitless because there would be no jurisdiction over those patents. Specifically, if this Court allows Plaintiff to amend the complaint, Amerigen would respond with a motion to dismiss for lack of subject matter jurisdiction under 35 U.S.C. § 271(e)(2).

Because the approval of Amerigen's ANDA is likely several years away, there is no traditional declaratory judgment jurisdiction over claims against Amerigen based on its proposed ANDA drug products. *Eisai Co., Ltd. v. Mut. Pharm. Co., Inc.*, No. 06-3613, 2007 WL 4556958, at *18 (D.N.J. Dec. 20, 2007) (finding no traditional declaratory judgment jurisdiction over patent infringement claims against ANDA-filer prior to ANDA approval, because "until the ANDA is approved . . . the controversy is not sufficiently immediate"). Indeed, Congress created the § 271(e)(2) action specifically to provide a jurisdictional "hook" for patentees to go to court and seek a declaratory judgment of infringement prior to ANDA approval. *Glaxo Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1569 (Fed. Cir. 1997).

Under 35 U.S.C. § 271(e)(2), this Court only has subject matter jurisdiction to adjudicate Plaintiff's infringement claims prior to approval of Amerigen's ANDA if the asserted patents are listed in the *Orange Book*. *AstraZeneca Pharms. LP v. Apotex Corp.*, 669 F.3d 1370, 1377 (Fed. Cir. 2012) ("[N]othing more was required to establish the district court's subject matter jurisdiction" than an allegation "that the Appellees' ANDA filings infringed its [Orange Book] listed patents under §271(e)(2)….")[8]; *Eisai*, 2007 WL 4556958, at *14 ("Eisai, as a matter of law, cannot maintain an infringement action pursuant to 35 U.S.C. § 271(e)(2) where the allegedly infringed patent was not listed in the *Orange Book* for the drug at issue[.]"); *Abbott Labs v. Zenith Labs., Inc.*, 934 F. Supp. 925, 930 (N.D. Ill. 1995) ("The Court agrees with Defendant that Plaintiff cannot hold it liable for patent infringement pursuant to §271(e)(2)(A), because Plaintiff did not have the '615 patent listed with the [HHS Secretary] … at the time Defendant filed its ANDA."); *see also Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 675-79 (1990) (explaining the breadth of §271(e)(1)'s "safe harbor" in contrast to §271(e)(2)'s "artificial act of infringement," which is limited to certain "relevant" patents); *Abbott Labs. v. Zenith Labs., Inc.*, No. 94 C 6792, 1995 WL 117984, at *10-11 (N.D. Ill. Mar. 16, 1995) (giving detailed explanation of connection between jurisdiction under 35 U.S.C. 271(e)(2) and the provisions of 21 U.S.C. 355(j), including the significance of the patent-in-suit being listed in the brand company's New Drug Application ("NDA") (which would then lead to listing the patent in the FDA's *Orange Book*)).[9] The only enforceable patents listed in the *Orange Book* with respect to

[8] In its letter brief, Plaintiff ignores this statement in *AstraZeneca* and, instead, bases its argument on a passage two sentences earlier that does not address, one way or the other, whether listing in the *Orange Book* is required and, therefore, does not contradict the recitation of *Orange Book* listing in the sentence just quoted.

[9] This tactic by brand companies to attempt to sue ANDA-filers on unlisted patents under 35 U.S.C. § 271(e)(2) is a new phenomenon that the Federal Circuit has not squarely addressed to

Adderall XR are the '096 and '148 patents-in-suit, and therefore those are the only two patents that Plaintiff may assert under 35 U.S.C. § 271(e)(2).

In its letter brief, Plaintiff cited several cases out of context to argue that a patent need not be listed in the *Orange Book* for jurisdiction under 35 U.S.C. § 271(e)(2) to apply. However, these cases are largely distinguishable or inapposite at least because: (1) the patent at issue in the case *was* listed in the *Orange Book* at the time the lawsuit was filed or shortly thereafter, and/or (2) the case involves a discussion of whether the ANDA filer submitted a Paragraph IV certification to the patent at issue, not whether the patent was listed in the *Orange Book*. For instance, Plaintiff has cited *Merck Sharp & Dohme Corp. v. Sandoz Inc.* as supporting its position. Case No. 12-cv-3289, 2013 WL 591976, at *3-4 (D.N.J. Feb. 14, 2013). But in that case, subject matter jurisdiction was only found where the patent at issue, while not listed in the *Orange Book* at the time the ANDA was filed, was listed shortly thereafter. *Id.* at *2 ("The omission [of the '942 patent-in-suit in the *Orange Book*] was corrected in April 2012, shortly before the filing of this lawsuit, but after submission of Defendants' ANDAs."). In contrast, the patent(s) Plaintiff intends to bring into this lawsuit have never been listed in the *Orange Book* for Adderall XR. Moreover, another district court case cited by Plaintiff is currently on appeal to the Federal Circuit. *Takeda Pharm. Co. v. Handa Pharms.*, LLC, Case Nos. C-11-840, C-11-1609,

---

date. The Federal Circuit indirectly addressed the issue of whether a patent must be listed in the *Orange Book* for jurisdictional purposes in the *AstraZeneca* case, as noted above. However, in that case the patents at issue were listed in the *Orange Book*, and therefore the Court was not required to address this issue head-on. The Federal Circuit has recently identified the propriety of asserting unlisted patents under 35 U.S.C. § 271(e)(2) as an open issue. *See Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1184 n.2 (Fed. Cir. 2014) (noting that "[n]either party raises or challenges the propriety of asserting patents that were not listed in the *Orange Book* against a generic manufacturer based on the filing of an ANDA, and we accordingly do not reach that issue."). This issue has been explicitly raised in a case currently pending before the Federal Circuit, and a decision is likely later this year. *Takeda Pharm. Co. v. TWi Pharm., Inc.*, Appeal Nos. 2014-1074 and 2014-1129 (pending in the Federal Circuit).

C-11-1610, 2013 U.S. Dist. LEXIS 74126 (N.D. Cal. Apr. 8, 2013) (currently Appeal Case No. 2014-1074 and 2014-1129 pending in the Federal Circuit). As will be demonstrated on appeal, the reasoning in *Takeda* is wrong, at least because the court in that case conflated and confused two related but separate issues: (1) whether a Paragraph IV certification is required in order to confer jurisdiction under 35 U.S.C. § 271(e)(2), and (2) whether a patent must be listed in the *Orange Book* in order to confer jurisdiction under 35 U.S.C. § 271(e)(2).[10] While the Federal Circuit has found that a Paragraph IV certification is not necessary to confer jurisdiction, the case law indicates that the patent must be listed in the *Orange Book* in order for jurisdiction to exist, as explained above. The defendant in *Takeda* argued that a patent must be listed in the *Orange Book* in order for jurisdiction to exist under 35 U.S.C. § 271(e)(2), but in ruling against the defendant, the *Takeda* court cited several cases that related only to Paragraph IV certifications.[11]

---

[10] While Paragraph IV certifications and *Orange Book* listing may go hand-in-hand, they often do not. For example, a patent may be listed in the *Orange Book* after an ANDA applicant files, such that the ANDA would not include a Paragraph IV certification to that patent. Nonetheless, the ANDA applicant could be sued on that patent under 35 U.S.C. 271(e)(2) because the patent was listed in the *Orange Book*.

[11] Plaintiff notes that the *Takeda* court stated that it "joins a number of other district courts in concluding that there is no requirement under [section 271(e)(2)] that a patent must be listed in the *Orange Book* in order for a drug manufacturer to bring an infringement action based on that patent against an ANDA applicant." *Takeda*, 2013 U.S. Dist. LEXIS 74126, at *63. However, the cases cited by the *Takeda* court largely address whether a ***Paragraph IV certification*** is necessary for jurisdiction, not whether the patent must be ***listed in the Orange Book***. *Merck*, 2013 WL 591976, at *2-4 (holding that jurisdiction existed despite lack of a Paragraph IV certification, when patent at issue was listed in the *Orange Book* shortly after the ANDA was filed); *Cephalon, Inc. v. Sandoz, Inc.*, Civ. No. 11-821-SLR, 2012 WL 682045, at *1-2, *5 (D. Del. Mar. 1, 2012) (concluding that a Paragraph IV certification is not necessary to confer jurisdiction where patents were late-listed to *Orange Book*); *Teva Pharms. USA, Inc. v. Abbott Labs.*, 301 F. Supp. 2d 819, 829 (N.D. Ill. 2004) ("The language of § 271(e)(2)(A) does not require that the ANDA contain a [Paragraph IV] certification to constitute an act of infringement.") (*Teva* involved an "old antibiotic," and therefore there is no *Orange Book* listing requirement); *Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*, Nos. 08-C-0953, 09-C-0108, 2009 WL 6337911, at *9 (E.D. Wis. Sept. 24, 2009) (holding in a case involving an Abbreviated New Animal Drug Application that "a Paragraph IV certification is not required to trigger an

Because the analysis of the *Takeda* case is flawed, and because these issues will be argued before the Federal Circuit in the coming week, that case should be given no weight at this juncture.

Moreover, Plaintiff is incorrect to the extent it suggests that because the ’768 patent has been asserted in other Adderall XR cases, it can be asserted here. First, the fact that the ’768 patent was asserted against other defendants in past Adderall XR litigations does not matter, as jurisdiction arguments cannot be waived. *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (“Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt.”). Second, as far as Amerigen can tell, the parties in those cases did not raise the issue of lack of subject matter jurisdiction (nor an objection to the use of their confidential information to evaluate patents that are not listed in the *Orange Book*), and therefore those cases do not speak to how such an objection would have been resolved.

## IV. CONCLUSION

For the foregoing reasons, Defendant Amerigen respectfully requests that the Court amend the Discovery Confidentiality Order entered in this matter to include the additional clarifying language requested by Defendant Amerigen.

---

infringement action under § 271(e)(2)”). Therefore, these cases do not bear on the issue of whether a patent must be listed in the *Orange Book* in order to give rise to jurisdiction under 35 U.S.C. § 271(e)(2).

Respectfully submitted,

AMERIGEN PHARMACEUTICALS, LTD.

Dated: March 5, 2015

/s/ *Steven Gerber*
Steven Gerber
Mary Pat Gallagher
GONZALEZ SAGGIO & HARLAN LLP
155 Willowbrook Blvd., Suite 300
Wayne, New Jersey 07470
Telephone: (973) 256-9000
Facsimile: (973) 256-9001

Of Counsel

Don J. Mizerk (admitted *pro hac vice*)
Katherine E. Rohlf (admitted *pro hac vice*)
HUSCH BLACKWELL LLP
120 S. Riverside Plaza, Suite 2200
Chicago, IL 60606
Telephone: (312) 655-1500
Facsimile: (312) 655-1501

*Attorneys for Defendant*
*Amerigen Pharmaceuticals, Ltd.*

**CERTIFICATION OF SERVICE**

I hereby certify that on this date, I caused the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AMERIGEN PHARMACEUTICALS, LIMITED'S MOTION TO AMEND DISCOVERY CONFIDENTIALITY ORDER** to be electronically filed with the Court and served via electronic notice from the Court's ECF system on all counsel appearing in this action as identified in the Notice of Electronic Filing.

GONZALEZ SAGGIO & HARLAN LLP

By: /s/ *Steven Gerber*
Steven Gerber

Dated: March 5, 2015